USDC SCAN INDEX SHEET











MICRO STAR

FORMGEN INC

JRB

3:96-CV-03435

*72*

*MEMOPNO.*



FILED

SEP 30 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRO STAR,<br><br>          Plaintiff,<br><br>    vs.<br><br>FORMGEN, INC., a corporaton;<br>GT INTERACTIVE SOFTWARE CORP.,<br>a corporation; 3D REALMS<br>ENTERTAINMENT, and DOES 1<br>through 100, inclusive,<br><br>          Defendant. | CASE NO. CV 96-3435 H(CM)<br><br>**MEMORANDUM ORDER** |

Defendants/counterclaim plaintiffs Formgen, Inc. and Apogee Software, Ltd. d/b/a 3D Realms Entertainment (together, "Movants") on August 9, 1996 filed an application for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. Movants, the manufacturers and distributors of the video CD-ROM game "Duke Nukem 3D" (hereinafter Duke 3D) allege that the video CD-ROM game "Nuke It," manufactured and distributed by plaintiff Microstar, infringes upon the creative works protected by Duke 3D's copyright and trademark registrations. Movants seek an order to enjoin any

72

further distribution and production of Nuke It, and to compel Microstar to recall all existing copies of Nuke It.

After reviewing the papers and the law, and hearing oral argument on September 23, 24, and 26, 1996, the court finds that good cause exists to partially grant movants' request for a preliminary injunction. Specifically, the court finds that Nuke It's depiction of scenes from Duke 3D on its packaging, as well as its offering of screen savers from Duke 3D, is an infringing use of movants' copyrighted creative works. As to the actual CD-ROM itself, and as to the trademark claims brought under the Lanham Act, the court denies movants' request for injunctive relief. Consequently, the court has issued a preliminary injunction, dated September 26, 1996, which orders Microstar to: (1) immediately cease from using screen scenes on Nuke It's packaging which infringe upon Duke 3D's copyrighted material; (2) recall all existing Nuke It packages which depict copyrighted Duke 3D screen scenes; (3) immediately cease from including any DN3D screen savers in its Nuke It products; and (4) make its best efforts to remove or cover over any Nuke It packaging on the market which makes reference to Duke 3D screen savers.

## BACKGROUND

Movants are the makers and distributors of the computer game "Duke Nukem 3D". As to their copyright, movants registered "Duke Nukem 3D, Shareware Version" with the Copyright Office on August 8, 1996, six days after Microstar filed a claim for declaratory judgment that it was not infringing on movant's copyrights or trademarks.

/////

As purchased in stores, the Duke Nukem 3D ("Duke 3D") game has 29 levels through which players advance, killing monsters and other evil creatures.  In order to continue to generate interest in the game, the movants included in the software the option and ability for players to create "new" levels themselves, which is done through an editor called BUILD.EXE.  Through this editor and other tools provided, users can create files with the extension .MAP, which they can play in addition to, or instead of, the levels that come with the game.  However, to play any of the new .MAP levels, users must own a registered copy of Duke 3D.  Whenever a player exits the Duke 3D game, a message appears on his screen which tells him about tools which are included and can be used to build new levels.  This same message additionally informs the user that once he creates his own new level, "you can then pass to your friends, or upload to other Dukers on-line."

One of the main issues before this court is the fact that the packaging for Nuke It contains 30 scenes from the Duke 3D game, depicting such original art work as the Cycloid, Emperor, Battlelord, Assault Trooper, Ripper Chaingun, Octabrain, and Enforcer.  In addition, a version of Nuke It released in July of 1996 contained 25 screen savers, described as "wallpaper," that depicted scenes and audiovisual elements from the Duke 3D game. Finally, an earlier version of Nuke It also contained at least two levels that were identical to those found on Duke 3D, the zoo.map and the E1L1Weap.map; these levels have been voluntarily removed by Microstar.  Accordingly, this court must determine if whether by granting permission for authorized users of the product to pass on or trade their new levels, movants have waived any or all rights to

copyright protection for commercial exploitation of their creative expression.

Duke 3D contains a copyright notice on both its packaging and on its screen. The opening screen for the build editor indicates that the build editor and associated tools may not be re-packaged and sold, and finishes by stating "Please refer to LICENSE.DOC for further information on levels created with BUILD.EXE." This LICENSE.DOC file contains several restrictions, including that there can be no commercial sales of any new levels created and that all rights are granted back to movants.

Microstar downloaded 300 of these new user created levels that were available on the Internet, and packaged them as "Nuke It." As these are just new "levels," Nuke It can only be utilized by users who already own a registered copy of Duke 3D. The "Nuke It" cover states "Over 300 New Levels for Duke Nukem 3D(TM)," and in small print in the corner of the cover contains a disclaimer that states "Requires registered version of Duke Nukem 3D(TM) - Duke Nukem 3D(TM) is a registered trademark of 3D Realms Entertainment. This product is not associated with nor will it be supported by 3D Realms Entertainment." After movants first complained to Microstar that Nuke It was infringing upon their trademark and copyright marks, Microstar requested a license, which was denied. Thereafter, Microstar added a red sticker ("red sticker disclaimer") to the cover of Nuke It which states "These levels were independently created by 3rd parties not affiliated with 3D Realms, creator of Duke Nukem 3D(TM)."

There is some dispute over whether these stickers have been placed on all copies of Nuke It being offered for sale, as movants

- 4 -

offer a declaration which says that as of August 3 and August 7, 1996, at three different stores in the New York area there were Nuke It packages without the red sticker disclaimer. Additionally, on September 25, 1996 movants offered another declaration which stated that as of that date several stores in the Dallas area were also selling Nuke It packages that did not contain the red sticker disclaimer. However, as it was not until the end of July that Microstar agreed to put the red sticker disclaimers on Nuke It, it is possible that there are still some packages in stores which have not yet been stickered. Microstar informed the court that as of this date, over 61,000 copies of Nuke It have been sold.

**DISCUSSION**

Preliminary injunctive relief is available if the party meets one of two tests: "(1) a combination of probable success and the possibility of irreparable harm, or (2) serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id.

On a claim for copyright or trademark infringement, the test for whether preliminary injunctive relief is warranted is the same: (1) a combination of probable successes on the merits and the possibility of irreparable injury or (2) serious questions going to the merits and a balance of hardships tipping sharply in movants

/////

favor.  See Triad Sys. Corp. v. Southeastern Express Co., 64 F.3d 1330, 1334 (9th Cir. 1995) cert. denied, 116 S.Ct 1015 (1996).

Likelihood of success on the merits is by far the most important factor in intellectual property cases.  "In a property infringement claim, a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm."  Johnson Controls, Inc. v. Phoenix Control Systems, 886 F.2d 1173, 1174 (9th Cir. 1989).

A.  Copyright Claims

Movants claim that they have a valid copyright in the Duke 3D game and its elements that extends to derivative works created by others.  Microstar responds that there has been no infringement of any rights granted by the copyright act, that Nuke It is permissible under the "fair use" doctrine, and that even if these two arguments fail, movants have waived or abandoned their rights to limit the creation and distribution of MAP files.  Microstar additionally alleges that LICENSE.DOC is not a valid licensing agreement

To establish copyright infringement, movants must demonstrate (1) that they own a valid copyright; and (2) that Microstar violated their alleged right to distribute derivative works.  Fiest Publications Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361-63 (1991).

1.  Infringement of Rights Granted By Copyright Act

In Lewis Galoob Toys, Inc. v. Nintendo of America, Inc., 964 F.2d 965 (9th Cir. 1992) cert. denied 113 S.Ct. 1582 (1993), the Galoob company sold the "Game Genie" which was designed to use Nintendo's console to control Nintendo's games.  Inserted between a game cartridge and the Nintendo system, the Game Genie allowed a

player to alter up to three features of the Nintendo game, such as increasing the number of lives, increasing the character's speed, or giving the character more strength.  As such the Game Genie did not alter data that was stored in Nintendo's game cartridges, but the changes would be displayed on the TV screen for the duration of the game.  Id. at 967.

The court held that the Game Genie did not create a derivative work, as it only enhanced the audiovisual displays originating in the Nintendo cartridge.  The court justified its holding by stating that a derivative work must "incorporate a protected work in some concrete or permanent form ... we cannot ignore the actual source of the Game Genie's display."  Id. at 969.

Microstar argues that Nuke It is really just a more sophisticated Game Genie.  Microstar points out that like the Game Genie, Nuke It does not supplant the demand for Duke 3D, as Nuke It is useless used with Duke 3D.  Microstar also argues that all of the copyrightable elements of Duke 3D observed on the screen while playing Nuke It are contained on the Duke 3D program files, and that the data on the MAP files contained on Nuke It is generic data and not programming.

As to the Nuke It CD-ROM itself, and the programming it contains, the court is not convinced that the movants have shown that the data sequence in the Nuke It MAP files is subject to copyright protection.  Furthermore, the court finds that Microstar has shown that the audiovisual elements which appear on the screen while playing Nuke It originate from Duke 3D, and not from Nuke It.  Therefore, the court finds that movants have not shown a valid copyright in the data sequence contained in the Nuke It MAP files,

and consequently the denies the injunctive relief requested as to the Nuke It CD-ROM itself.

However, as to the thirty screen scenes which appear on the packaging of Nuke It, as well as the Duke 3D screen savers offered on some versions of Nuke It, the court finds that the movants have shown that they own a valid copyright in these audiovisual elements, and that Microstar has violated movants' right to distribute its derivative work.

Specifically, the court finds that movants have made a sufficient showing that there is a reasonable likelihood that they would succeed at trial on the merits of the claim that the majority of scenes shown the packaging of "Nuke It," as well as the DN3D screen savers included with "Nuke It," infringe upon DN3D's copyright.  The court finds that movants have made a sufficient showing that they would suffer irreparable harm if Microstar is not restrained from using either screen savers or package scenes that infringe upon DN3D's copyright, that the balance of the hardships in the event that Microstar is not so restrained weighs in favor of the movants, and that the public interest would be served by the issuance of the preliminary injunction.  Consequently, the court grants movants' requested injunctive relief with respect to the Duke 3D screen scenes and screen savers.

In summary, as the court has concluded that the MAP files do not constitute copyright infringement but the packaging does, Microstar remains free to re-package and continue to sell the Nuke It CD-ROM, so long as the product does not infringe upon Duke 3D's protected creative works.

/////

## 2. Fair Use Doctrine

In copyright and trademark injunction requests, in determining the likelihood of success, the moving party must show a likelihood of success on the non-moving party's affirmative defenses as well, such as "fair use." Religious Technology Center v. Netcom On-Line Communication Services, Inc., 923 F.Supp. 1231, 1241 (N.D. Cal 1995). Accordingly, the court addresses the defense of fair use as it applies to Nuke It's use of the Duke 3D screen scenes and screen savers.

Even though a work may be fully protected under a valid copyright, the "fair use" doctrine may allow it to nevertheless be copied by an unauthorized party. In 17 U.S.C. section 107, Congress has set out four non-exclusive factors to be used in determining the applicability of the "fair use" doctrine: (1) the purpose and character of the use, including whether it is for commercial use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect and use upon the potential market for or value of the copyrighted work.

Although Microstar relies heavily on Galoob, which also upheld the defense of the fair use doctrine, it fails to recognize that in Galoob the court emphasized the fourth factor, and said that it was critical to its holding that Nintendo admitted that it had no future plans to put out something like the Game Genie. 964 F.2d at 971. In the present case however, movant has stated that it does have plans to put out a product very similar to Nuke It in the near future. As such, the court finds that Nuke It does affect the value of movants' copyrighted work.

As to the screen scenes, upon application of the four-factor test the court concludes that the totality of the thirty Duke 3D screen scenes on the Nuke It packaging is not fair use. Similarly, the court also concludes that the inclusion of Duke 3D screen savers with Nuke It is also not fair use.

### 3. Waiver/Abandonment

Microstar also argues that even if the Duke 3D screen scenes and screen savers were at one time protected by a valid copyright, by their actions movants have waived or abandoned any such protections. Microstar first contends that LICENSE.DOC is not a binding license agreement whose restrictions could be enforced upon purchasers of Duke 3D, as the restriction on the LICENSE.DOC file is not mentioned on the box or in any of the packaging, is not necessary to play the game, and is not likely to be opened by the average user. Microstar further argues that even if this were a "shrinkwrap" license, which it clearly is not, it would not be sufficient to create a binding contract. See Step-Saver Data Systems, Inc. v. Wyse Technology, Inc., 939 F.2d 91 (3rd Cir. 1991); Vault Corp. v. Quaid Software, Ltd., 847 F.2d 255 (5th Cir. 1988); Lemley, Intellectual Property and Shrinkwrap Licenses, 68 S.Cal.L.Rev. 1239 (1995). In the only case which has upheld the validity of such a license, ProCD v. Zeidenberg, 86 F.3d 1447, 1452 (7th Cir. 1996), there was no question that the movant knew of the license, and knew that by his actions he was consenting to its restrictions. This was so because the box contained a statement that users were bound by the license agreement enclosed, and the license was printed on the CD ROM disc, in the manual, and appeared on the screen every time the program ran. Finally, the license

provided that the user could get a refund if he did not agree to the terms.  Id.

Although Microstar argues that LICENSE.DOC is not binding, it also contends it has an implied license to use the screen scenes and screen saver images in any way that it chooses.  The gravamen of this argument is that by encouraging users of Duke 3D to create new levels and share them with the world, movants in effect granted an open license to use any copyrighted material, such that they have waived or abandoned any claim to copyright protection.  As related to the .CON files, which contain source code for certain portions of the game and are usually very proprietary, Microstar points out that the text portion of these files include a message that "3D Realms encourages you to experiment freely with the parameters in this file and to share your discoveries with the world."  As to movants' argument that although they authorized unlimited distribution of new levels, they did not mean to authorize commercial distribution, Microstar argues that "the intent relevant in contract matters is not the party's subjective intent, but their outward manifestation of it."  I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996).

The court, however, disagrees with Microstar's proposition that by permitting users to create works for non-commercial purposes, movants have impliedly licensed commercial competition. Waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." Campbell v. Wood, 18 F.3d 662, 672 (9th Cir. 1994) cert denied 114 S.Ct 2125 (1994), citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  The court notes that regardless of who else might have read LICENSE.DOC, Microstar has conceded that it had knowledge of the restrictions contained therein.  While the

- 11 -

court agrees that movants could have done a better job in ensuring that Duke 3D users assented to the LICENSE.DOC restrictions, the court is not willing to conclude that Microstar has an implied license to use the product for commercial competition. As such, the court finds that Microstar has not made a sufficient showing that movants waived all of their rights as to the commercial competition with their product.

The court also notes here its earlier holding that the MAP files which Duke 3D users place on the Internet do not contain any copyrightable material. Therefore, Microstar's claim that movants waived or abandoned their copyright protection by encouraging its users to share new levels, or MAP files, with the rest of the world is rendered moot by the fact that what the users create and share is not protected in the first place.

Under the totality of the circumstances, the court rejects Microstar's waiver and abandonment defenses, and finds that the use of the screen scenes on Nuke It's packaging, as well as its offer of 25 free Duke Nukem scenes for use as wallpaper, did infringe upon movant's copyrighted creations.

B. **Lanham Act Claims**

1. False Association

In this case it is the movants who have the burden of showing that Nuke It creates a false association with Duke 3D, by showing that there is a likelihood of confusion in the consuming public. The Ninth Circuit has set forth an eight factor test which is used to assess the "likelihood of confusion" : (1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4)

actual confusion; (5) degree to which the marketing channels converge; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendants in selecting the allegedly infringing mark; and (8) likelihood that parties will expand their lines.    Metro Publishing v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993).

Microstar points out that the only evidence of confusion put forth so far by the movants is the declaration of Apogee's president, and cites Self-Realization Fellowship Church v. Ananda, 59 F.3d 902, 910 (9th Cir. 1995) for the proposition that "attestations from person in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public." In contrast, Microstar has submitted the declarations of independent consumers who have testified that there is no possibility of confusion, as well as the declaration of an expert who testified to the same effect.

Comparing the two packages, movants argue that the disclaimers are not sufficient and in fact only serve to confuse the consumer into thinking that Nuke It is associated with Duke 3D. However, looking at the two packages, the court finds that when the red sticker disclaimer is attached there is not a "likelihood of confusion."

Based on the evidence offered by both sides, and from the court's independent visual inspection, movants have not shown that they will likely prevail on their claim that there is a likelihood of confusion between Nuke It and Duke 3D. Consequently, the court denies movants' request for injunctive relief based upon false association.

2.  Trade Dress

Trade dress refers to the overall image and appearance of a product.  Vision Sports v. Melville Corp., 888 F.2d 609, 613 (9th Cir. 1989).  Similar to trademark infringement, trade dress claims also focus on consumer confusion, using the eight factor test described above.  Movants allege that the back cover of Nuke It, which shows images of the game, gives buyers substantial exposure to Duke 3D's trade dress at the point of purchase.  Movants also allege that Nuke It's logo is in a similar style and color, and that both boxes employ "mushroom cloud" imagery.

However, as Microstar points out, Nuke It uses different colors, typefaces, logos, and pictures than Duke 3D, such that a consumer would likely not be confused.  Despite movants' claims to the contrary, the court finds that the three disclaimers on the Nuke It package do help to eliminate any confusion between the two products, especially the red sticker disclaimer.  Similar to the false association claim, at this point movants have not shown that there is a likelihood that they will prevail on a trade dress claim.  Consequently, the court denies movants' request for injunctive relief based upon trade dress.

3.  False advertising

Movants allege that by stating that there are over 300 "new" levels, Microstar is falsely advertising.  Movants argue that there is nothing "new" about these levels, but rather that they are a "cut and paste" of already existing levels.  However, as Microstar points out, that as to the consuming public who own Duke 3D, these levels are "new," as they are not a part of the original game.  Here movants clearly have not shown that there is a likelihood that they

will prevail on their false advertising claim.   Consequently, the court denies movants' request for injunctive relief based upon false advertising.

### CONCLUSION

Defendants/counterclaim plaintiffs Formgen, Inc. and Apogee Software, Ltd. d/b/a 3D Realms Entertainment (together, "Movants") on August 9, 1996 filed an application for a Preliminary Injunction pursuant to Federal  Rule of Civil Procedure 65.   Movants, the manufacturers and distributors of the video CD-ROM game "Duke Nukem 3D" (hereinafter Duke 3D) allege that the video CD-ROM game "Nuke It," manufactured and distributed by plaintiff Microstar, infringes upon the creative works protected by Duke 3D's copyright and trademark registrations.   Movants seek an order to enjoin any further distribution and production of Nuke It, and to compel Microstar to recall all existing copies of Nuke It.

After reviewing the papers and the law, and hearing oral argument on September 23, 24, and 26, 1996, the court finds that good cause exists to partially grant movants' request for a preliminary injunction.   Specifically, the court finds that Nuke It's depiction of scenes from Duke 3D on its packaging, as well as its offering of screen savers from Duke 3D, is an infringing use of movants' copyrighted creative works.   As to the actual CD-ROM itself, and as to the trademark claims brought under the Lanham Act, the court denies movants' request for injunctive relief. Consequently, the court has issued a preliminary injunction, dated September 26, 1996, which orders Microstar to: (1) immediately cease from using screen scenes on Nuke It's packaging which infringe upon Duke 3D's copyrighted material; (2) recall all existing Nuke It

- 15 -

packages which depict copyrighted Duke 3D screen scenes; (3) immediately cease from including any DN3D screen savers in its Nuke It products; and (4) make its best efforts to remove or cover over any Nuke It packaging on the market which makes reference to Duke 3D screen savers.

IT IS SO ORDERED.

DATED: 9/27/96

MARILYN L. HUFF, JUDGE
UNITED STATES DISTRICT COURT

COPIES TO:
MICHAEL A KIRBY
JONATHAN A BOYNTON
POST KIRBY NOONAN & SWEAT
600 WEST BROADWAY SUITE 1100
SAN DIEGO   CA   92101

MICHAEL S OBERMAN
JEFFREY S TRACHTMAN
KRAMER LEVIN NAFTALIS & FRANKEL
919 THIRD AVENUE
NEW YORK   NY   10022

PHILIP H STILLMAN
FLYNN SHERIDAN & TABB
PO BOX 690
6125 EL TORDO
RANCHO SANTA FE   CA 92067

*Copies mailed, addresses updated  9/30*

- 17 -