USDC SCAN INDEX SHEET

















CAG    4/27/99    8:18

3:96-CV-03435    MICRO STAR V. FORMGEN INC

*133*

*OPPM.*

**FLYNN, SHERIDAN, TABB & STILLMAN**
PHILIP H. STILLMAN, SBN 152861
SETH F. GORMAN, SBN 191893
3790 Via de la Valle, Suite 307
Del Mar, CA 92014
(619) 793-4900 (Telephone)
(619) 793-4912 (Facsimile)

Attorneys for Plaintiff and Counterclaim-Defendant

ORIGINAL

FILED

99 APR 26 PM 5: 23

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRO STAR | CASE NO.: 96-3435H (LAB) |
| Plaintiff, | **PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS' AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS** |
| vs. | |
| FORMGEN, INC., a coporation; GT INTERACTIVE SOFTWARE CORP., a corporation; 3D REALMS ENTERTAINMENT, and DOES 1 THROUGH 100, INCLUSIVE, | Date:  May 10, 1999
Time:  10:30 a.m.
Courtroom:   1
(Hon. Marilyn J. Huff, Judge Presiding) |
| Defendants. | |
| FORMGEN, INC., GT INTERACTIVE SOFTWARE CORP., and APOGEE SOFTWARE LTD. d/b/a 3D REALMS ENTERTAINMENT | |
| Counterclaim-Plaintiffs, | |
| vs. | |
| MICRO STAR | |
| Counterclaim-Defendant. | |

133

## I.

## LAW OF THE CASE AND MATTERS NOT RAISED OR DECIDED ("RULE OF MANDATE")

When an appellate court decides a legal issue, that decision is generally not open to relitigation in subsequent proceedings in the same case between the same parties. *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977). However, whether to apply the law of the case doctrine is discretionary and a court may properly exercise its discretion to reconsider a previously decided issue if the facts now before the district court are substantially different from those in the appellate record, changed circumstances exist, or manifest injustice would otherwise result. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1992). The "law of the case" doctrine applies only to issues *actually decided* in the previous proceeding. Consequently, a district court may consider issues not decided by the appellate court. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996). This principle is sometimes referred to as the "rule of mandate" which allows the district court to decide anything not foreclosed by the mandate. *Herrington v. Sonoma County*, 12 F.3d 901, 904-905 (9th Cir. 1993).

Based upon the record presented to the Ninth Circuit, it held that Movants would be likely to prevail on the preliminary injunction. The Court did not address multiple factual issues which were not the subject of the appeal, including Micro Star's complaint separate from its affirmative defenses. There was no order on Micro Star's causes of action, separate from its affirmative defenses. Among the factual issues either reserved or not developed on appeal include: (1) beneficial interest and copyright ownership; (2) invalidity of the copyright; and (3) Micro Star's causes of action for violation of the Sherman Act, Intentional Interference with Contractual Relations, Unfair Competition, and Conspiracy. Accordingly, these issues are not precluded by the Ninth Circuit opinion. Moreover, there is a question whether the matters were "actually decided" and "on the merits" considering that a review of preliminary injunction us reviewed for an abuse of discretion. *Miller v. California Pac. Med. Ctr.*, 19 F.3d 449, 455 (9th Cir. 1994) (en banc).

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS' AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**
Case No. 96-3435H                                        - 1 -

## II.

## SUMMARY JUDGMENT STANDARDS AND BURDEN SHIFTING

It is axiomatic that summary judgment is appropriate only when there are no disputed issues of fact and movant is entitled to judgment as a matter of law. Simply because facts are undisputed does not mean movant is entitled to summary judgment, since differing inferences can often be drawn from same undisputed facts. *Desmond v. Varrasso*, 37 F.3d 760 (1st Cir. 1994). Because the court concerns itself with the existence of any genuine issue of material fact, the court may not weigh the evidence, judge the credibility of witness statements, or, in essence, try the case. Summary judgment is not trial by affidavit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). In addition, on summary judgment, the moving party has the burden to affirmatively demonstrate that there is no evidence to support a judgment for the nonmoving party. Conclusory assertions are insufficient to shift the burden to Micro Star to demonstrate material issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III.

## THE MOVANTS HAVE NOT MET THEIR BURDEN ON OWNERSHIP AND THE RECORD DISCLOSES MATERIAL ISSUES OF FACT

In order to establish copyright infringement, the movant must establish: (1) ownership of a valid copyright or that it is the exclusive licensee of the copyright; and (2) copying of unlicensed, protected elements of its copyrighted work. *Apple Computer, Inc. v. Microsoft Corporation*, 35 F.3d 1435, 1442 (9th Cir. 1994). In order to meet their burden on summary judgment, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). "[T]herefore, the court must ..consider the burden of proof on the issue and where it will rest at trial...*Where the moving party has the burden...his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" *Calderone v. United States*, 799 F.2d 254, 259 (emphasis in

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS
Case No. 96-3435H                              - 2 -

original). For all standing questions, the burden of proof is on the plaintiff. *Baker v. United States,* 722 F.2d 517, 518 (9th Cir. 1983). Although a certificate of registration creates a rebuttable presumption of copyright validity, "where other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Industries Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980).

Here, three parties are moving for summary judgment, FORMGEN, INC., GT INTERACTIVE SOFTWARE CORP., and APOGEE SOFTWARE, LTD. on their alleged "ownership" of a valid copyright. To bring an infringement action under § 501(b) of the Copyright Act, a plaintiff must be the owner of a copyright, its assignee, or an exclusive licensee. *Broadcast Music, Inc. v. CBS, Inc.,* 221 U.S.P.Q. 246 (S.D.N.Y. 1983); 17 U.S.C. § 501(b).

**A.    FORMGEN and GTI Have Not Established That They Are Exclusive Licensees under the Definition of the Copyright Act**

"Under the prior copyright acts, as well as the current Act, an exclusive licensee has standing to sue for infringement, provided he joins the legal owner as a party." *Campbell v. Board of* Trustees, 817 F.2d 499, 504 (9th Cir. 1987); *Russell v. Price,* 448 F. Supp. 303, 305 (C.D. Cal. 1977), aff'd 612 F.2d 1123 (9th Cir. 1979), cert. denied, 446 U.S. 952, 100 S. Ct. 2919, 64 L.Ed. 2d 809 (1980).

The evidence that the movants have presented are: (1) a declaration by GTI Vice President Harry Rubin describing the content of a license between his company and of a subsidiary company, FormGen (Movants' Exhibit 1), and (2) copies of a copyright registration for Duke Nukem 3D and Duke Nukem 3D Shareware Version (Movants' Exhibit 3).

As the Court in *Micro Star v. Formgen,* 154 F.3d 1107, 1113 (9th Cir. 1998) held "Section 204 of the Copyright Act requires the transfer of the exclusive rights granted to copyright owners (including the right to prepare derivative works) to be in writing." *See* 17 U.S.C. § 204(a); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 556 (9th Cir. 1990). Movants have failed to allege a written contract or present any affirmative evidence that GTI or FORMGEN have entered into such a written exclusive license such that they have standing to sue for copyright infringement under 17 U.S.C.

501(b). As movants themselves stated in their motion, "a plaintiff must prove (1) ownership of a valid copyright . . . ." Accordingly, just as in *Schwasinger v. Price*, 789 F.Supp. 347, where no written transfer of copyright documents had been presented to the court, GTI and FORMGEN have not met their burden of establishing "ownership of a valid copyright."

Formgen has judicially noticed a declaration of a GTI Vice President describing the contents of the licenses between Apogee and Formgen and between Apogee and GTI. (Movants' Exhibit 1) If the license is a written contract, testimony on its contents without producing the original is barred by the Best Evidence Rule and is inadmissible hearsay. See Fed. R. Evid. R. 801, 1001. If there is no written license, then FORMGEN and GTI have no exclusive right under the Copyright Act. 17 U.S.C. § 204(a).

However, even under the inadmissible hearsay, violation of the best evidence rule, and accepting the truth thereof, neither Formgen nor GT have been granted an "exclusive right" under the Copyright Act.   Mr. Ruben declared of the content of FormGen's license:

> Apogee has granted FormGen the exclusive worldwide rights, for a four-year period, to market, distribute, and sell the personal computer version of DN3D. Additionally, FormGen has the exclusive right to distribute "screen savers" with Duke Nukem motifs (that is, the images that appear on a video monitor when an application program is not in active use to prevent burn-in). Rubin Decl., ¶ 3

Mr. Ruben declared of the content of GT's license:

> Apogee has granted GTI the exclusive worldwide rights, for the duration of Apogee's intellectual property rights in DN3D, to market, distribute, and sell the dedicated console and video arcade versions of DN3D. GTI also has been licensed the rights to distribute the next Duke Nukem game, "Duke Nukem Forever," for all media. Rubin Decl., ¶ 3.

Mr. Ruben declared of non-party Wizardworks' license:

> Most recently, Wizardworks is being licensed to distribute and market amateur-created "level packs" (described below). Rubin Decl., ¶ 3.

An "exclusive license" requires an exclusive grant of one or more of the exclusive rights of the copyright proprietor. An exclusive sales distributor of the goods manufactured is not an "exclusive licensee". *Comptoir de l'Industrie Textile de France et al. v. Fiorucci, Inc. et al.*, 204 U.S.P.Q. (BNA) 557, 1979 U.S. Dist. LEXIS 13022 *4 (S.D.N.Y. 1979). In *Comptoir*, the owner of a copyright and its exclusive sales distributor in the United States, apparently contending it was the

holder of an exclusive license, brought an action for copyright infringement. The Court held that the owner had standing but the distributor did not. The distributor had a sales distributorship agreement, rather than an exclusive right under the Copyright Act. "Boussac's status as exclusive sales distributor of the goods manufactured by C.I.T.F. does not in and of itself accord it standing to sue under the statute. Moreover, to carry plaintiffs' contention to its logical conclusion would be to provide a basis for standing to any wholesaler or retailer in the chain of title who has an economic interest in the goods." This question precluded summary judgment in *Swarovski America, Ltd. v. Silver Deer, Ltd.*, 537 F. Supp. 1201 (D.C. Colo. 1982). The court held that as to the right to sell, it was unclear whether the licensee was granted an exclusive right, since the agreement stated that the licensee was to have an "exclusive nontransferable copyright" but it also conditioned the licensee's rights on the licensor's right to sell the licensed product in the licensed area.

Likewise, in *Broadcast Music, Inc. v. CBS, Inc.*, 221 U.S.P.Q. 246, the court reaffirmed that the Copyright Act requires that an exclusive licensee must possess one or more of the exclusive rights under a copyright, anything different bars suit for infringement. Standing is a threshold issue that may be raised at any time in the proceedings. *Bertolino v. Italian Line*, 414 F. Supp. 279, 285 (S.D.N.Y. 1976).

Because movants have failed to produce documentary evidence of their "ownership of copyrights" by way of license, they have not met their burden of establishing ownership to shift the burden to Micro Star. *Olympia Tovar v. United States Postal Service*, 3 F.3d 1271, 1278 (9th Cir. 1993) (Broad, conclusory statements are insufficient to shift the burden to the non-moving party to demonstrate that there is a material issue of fact precluding summary judgment); *Celotex Corp. v. Catrett*, 477 U.S. at 323; id at 328 (White, J., concurring) ("conclusory assertion that the plaintiff has no evidence to prove his case" insufficient to meet moving defendant's burden). Moreover, the record demonstrates that there significant questions of material fact. The record discloses that the declaration of Rubin that Formgen and GTI have each been granted one or more of the exclusive rights under the Copyright Act by written contract, and are not merely exclusive sales distributors for a region. Moreover, it is uncertain if and when these supposed licenses were granted and if it was

before, after, or during any alleged infringement. Accordingly, notwithstanding the non-exclusivity of GT and FORMGEN's purported licenses, it is unclear from the record presented whether or when they had a beneficial interest at the time of the alleged infringements, and which, if any, of Micro Star's distributions infringe. The scope of the rights granted by the language of the licenses also raise a genuine issue of material fact whether GT and Formgen actually had an exclusive license. *See also Sealed Declaration of Seth Gorman, Exhibit 3* (BATES F110-F121) ¶¶ 4.A - 4.F; *Sealed Gorman Decl., Exhibit 4* (BATES F106-F109) ¶ III); *Sealed Gorman Decl., Exhibit 5* (BATES F94-F105) ¶ 4(A)-4(D); *Sealed Gorman Decl., Exhibit 6* (BATES G161-G185) ¶2.A - 2.A, 2.B., & 2.F.

Accordingly, summary judgment is precluded. *A. Brod, Inc. v. SK&I Co.*, 998 F. Supp. 314, 328 (S.D.N.Y. 1998) ("without a determination by a finder of fact of the "circumstances surrounding the transfer of property and the relationship of the parties," this conclusion cannot be reached as a matter of law."); *Schoenberg v. Shapolsky Publrs., Inc.*, 916 F. Supp. 333 (S.D.N.Y. 1996) (disposition of question of original ownership of the work rests almost entirely on questions of fact and state contract law).

### B. Apogee Has Not Established that it Owned the Copyright At the Time of the Alleged Infringement

For all standing questions, the burden of proof is on the plaintiff. *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983). Although a certificate of registration creates a rebuttable presumption of copyright validity, "where other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Industries Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980). For example in *Guskin v. Guralnik*, 1987 U.S. Dist. LEXIS 2747 *7 (S.D.N.Y. 1987), the moving party attached an application for registration of a claim of copyright to the complaint. Although the registration beared the names of both Guskin and Guralnik, the court held that that alone was not dispositive of the question of ownership. The Court cannot conclude that "there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the [defense] succeed."

At the time of the alleged infringement, the copyright registrations show the Apogee did not

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

possess the copyright to (1) the computer programs for Duke Nukem 3D; and (2) audiovisual elements of Duke Nukem 3D; and (3) the computer software Build Engine and Build Editor. See Movants' Exhibit 2.

On the face of the supplemental registrations of September 13, 1996, the following is represented: Ken Silverman who created the computer software build engine, build editor, and audiovisual elements did not grant an exclusive license to Apogee until September 13, 1996 as revealed on the face of the supplemental copyright registrations; Allen H. Blum III who created the computer programs for Duke Nukem 3D and other audiovisual elements, did not assign his rights to Apogee as revealed on the supplemental copyright registrations until September 13, 1996; and Todd Replogle who also created the computer programs for Duke Nukem 3D and other audiovisual elements, did not assign his rights to Apogee as revealed on the supplemental copyright registrations until September 13, 1996.  See Movants' Exhibit 2.   The packaging of Duke Nukem 3D does not reveal Apogee's ownership of a copyright. See Movants' Exhibit 1 to Exhibit 6. The User's Guide set states that Duke Nukem 3D is copyrighted by 3D Realms Entertainment. See Movants' Exhibit 2 to Exhibit 6.  However, no copyright registration has been produced stating copyright ownership by 3D Realms Entertainment.  Moreover, to add more confusion to who owns what copyrights and whose copyrights Micro Star allegedly infringed, the copyright registration to Duke Nukem 3D reveals that it incorporated pre-existing works: "Duke Nukem character from Duke Nukem I and Duke Nukem II; Duke Nukem 3D share ware version." See Movants' Exhibit 2.  However, no copyright registrations have been produced establishing that any one of the movants owns the Duke Nukem character from Duke Nukem I and Duke Nukem II.  Movants' cross-complaint filed on August 9, 1996 before the September 13 supplemental registrations were filed purportedly transferring rights to the audiovisual elements of Duke Nukem, adds more confusion: "Apogee is the owner, *inter alia*, of the exclusive rights to reproduce, distribute, display, and create derivative works of DN3D," Counter-suit, ¶ 84.

Moreover, the copyright registration reveals that Apogee obtained some of the rights to the product by exclusive license–yet has not produced that exclusive license, defined its time, scope,

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'**
**AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**
Case No. 96-3435H                                    - 7 -

and nature, sufficient to eliminate every and all question of fact as to the exclusive rights to pursue all copyrights. *See* Movants' Exhibit 2 (*Supplemental Registration for Duke Nukem 3D describing* that "Ken Silverman is an author. His contribution was not a work made for hire. He is a citizen of the U.S.A. and is domiciled in the U.S.A. The nature of his authorship is the computer software Build Engine and Build Editor for Duke Nukem 3D and other audiovisual elements.")

Obviously, with ownership of the Duke Nukem character not established by plaintiff and the record supporting that the audiovisual elements, computer programs, software build engine, and build editor were not owned by movants at the time of the alleged infringement, the record is not clear whether Micro Star has infringed on any rights owned by movants, what parts of Nuke It might infringe on what rights actually held by movants, and to what extent there was an infringement of any one of the movants' rights, if any. Movants have not met their burden of establishing that there is no question of its complete ownership to the exclusive rights on which it now seeks summary judgment. *Manning v. Miller Music*, 174 F.Supp. 192 (S.D.N.Y. 1959) ("The party bringing suit must not only be a proprietor in this sense but also a copyright 'proprietor', that is to say, he must have owned the copyright at the time of the infringement."). When a transfer is made, it will not ordinarily vest in his assignee a cause of action for an infringement which occurred prior to the assignment. *Kriger v. MacFadden Publications, Inc.*, D.C.S.D.N.Y., 43 F.Supp. 170, 172.

Accordingly, movants have not met their burden of establishing ownership under the Copyright Act, and questions of material fact abound as to what rights Apogee, Formgen and GTI owned, if any, at any and all of the relevant times of the alleged infringement. *See Manning v. Miller Music*, 174 F.Supp. 192 (S.D.N.Y. 1959) (cannot pursue infringement of those parts of the copyrighted works which they did not have ownership at the time of the alleged infringement).; *Apple Computer, Inc. v. Microsoft Corporation*, 35 F.3d 1435, 1442 (9th Cir. 1994).

### C.    Copyright Invalidity

Since ownership of a valid copyright is the most fundamental element of a copyright infringement action, an effective defense is copyright invalidity. In *Martin v. Cuny*, 887 F Supp 1390 (D.C. Colo 1995), the district court held that, where the plaintiff had knowingly omitted

several pieces of crucial information and had also submitted false information in his registration application, the registration was invalid, and thus there was no infringement of copyright. Similarly in *Foamation, Inc. v. Wedeward Enters.*, 947 F Supp 1287 (E.D. Wis. 1996), the Court held that where the copyright application contains material misrepresentations and omissions, the copyright was invalid. In *Foamation,* the copyright claimant had not revealed that he was not the author of the work and had not indicated how he obtained ownership of the copyright. *See also Fred Riley Home Bldg. Corp. v Cosgrove*, 883 F Supp 1478 (D.C. Kan. 1995).

Here, the copyright registration of August 8, 1996, upon which the complaint was brought contained multiple misrepresentations and omissions. In particular, as revealed by the supplemental registration filed September 13, 1996, it was revealed that the computer program for Duke Nukem 3D, the audiovisual elements, the software build engine, and the build editor were not authored by Apogee Software, Ltd. *See* Movants' Exhibit 2. Accordingly, movants' complaint which is based upon the registration of August 8, 1996 is barred, or in the alternative, any infringement prior to September 13, 1996 based upon the false registration is not actionable. Moreover, a question of fact is revealed by the Duke Nukem 3D User's Guide. The User's Guide states that Duke Nukem 3D is copyrighted by 3D Realms Entertainment. *See* Movants' Exhibit 2 to Exhibit 6. Either the manual is materially false or the copyright registration is invalid based upon the admission by Apogee in publishing the representation.

## IV.

## MOVANTS' MOTION TO DISMISS MICRO STAR'S COMPLAINT

Movants draft 29 lines in support of their motion to dismiss Micro Star's complaint for (1) Declaratory Judgment; (2) Violation of the Sherman Act; (3) Intentional Interference With Contractual Relations; (4) Unfair Competition; and (5) Conspiracy.

### A.    Standards Governing a Motion to Dismiss

Post-answer motions to dismiss (Rule 12(b)) for failure to state a claim are treated as motions

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**
Case No. 96-3435H                              - 9 -

Generally, a motion to dismiss for failure to state a claim is viewed with disfavor and should be rarely granted. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 74 L. Ed. 2d 953, 103 S. Ct. 729 (1983). It is immaterial whether the court believes plaintiff will succeed at trial. *Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir. 1976).

**B.    The Complaint States a Cause of Action for Violation of the Sherman Act**

Movants' arguments in support of their motion to dismiss this cause of action are repeated in full below:

> As its second claim, Micro Star seeks relief based on Movants' attempt to "monopolize" the market for DN3D. However, since Movants – as the Ninth Circuit observed – have an exclusive right to the market for DN3D. However, since Movants – as the Ninth Circuit observed – have an exclusive right to the market for DN3D and its sequels, there can be no unlawful monopoly; Movants are simply exercising the rights accorded to them under the Copyright Act. *See Russell v. Price*, 612 F.2d 1123, 1128 n.16 (9th Cir. 1979), *cert. denied*, 446 U.SS. 952, 100 S. Ct. 2919, 64 L. Ed. 2d 809 (1980) ("A copyright proprietor has an exclusive monopoly over all uses of the protected work, including the right to copy, print, vend, publish, make own versions of, perform or exhibit the work.").

See page 19.

Micro Star has stated the elements sufficient to state a cause of action for violation of the Sherman Act. To establish a Sherman Act Section 2 violation for attempted monopolization, a private plaintiff seeking damages must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power', and (4) causal antitrust injury. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).

Micro Star alleges a "specific intent to control prices or destroy competition." The FAC states: "Duke Nukem 3D and add-on programs for Duke Nukem 3D is a discrete market within the video game industry. Duke Nukem 3D currently accounts for a significant portion of the video game market." FAC ¶ 36. Further, "As set forth above, the defendants have the specific intent to monopolize the relevant market and have conspired to attempt to monopolize the relevant market through, among other things, misuse of their copyright." FAC ¶ 37.

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS
Case No. 96-3435H                                    - 11 -

for judgment on the pleadings under Rule 12(c). *Aldabe v.* Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980); *St. Paul Ramsey County Medical Center v. Pennington County S.D.* (8th Cir. 1988) 857 F.2d 1185, 1187. However, if matters outside of the pleadings and matters of which the court may not properly take judicial notice are raised, then the Court may convert the noticed motion to dismiss as a motion for summary judgment. *See Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1990). The fact that it is joined with the summary judgment is not dispositive. *See* Fed. R. Civ. P. 12(g) ("A party who makes a motion under this rule may join with it any other motions herein provided for then available to the party."). However, movants refer to only matters of which the Court may properly take judicial notice, and thus a conversion to summary judgment is inappropriate. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (court make take judicial notice of official records and reports without converting Rule 12 motion into Rule 56 motion for summary judgment); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994).[1]

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. *Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir. 1993). A motion to dismiss for failure to state a claim will be denied unless it appears to a certainty that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied,* 479 U.S. 1064, 107 S. Ct. 949, 93 L. Ed. 2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to plaintiff. *N.L. Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). All inferences reasonably drawn from these facts must be construed in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989). Defendant is not entitled to judgment on the pleadings if the answer raises issues of fact or an affirmative defense which, if proved, would defeat plaintiff's recovery. *Id.*

---

[1] If this Court treats the motion to dismiss as a motion for summary judgment, the Court must give notice and "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS
Case No. 96-3435H                              - 10 -

Micro Star alleges "predatory or anticompetitive conduct directed at accomplishing that purpose." The FAC alleges: "As set forth above, the defendants, through their knowingly baseless threats of legal action against Nuke It's distributors, have committed several anticompetitive acts in furtherance of their intent. In particular, the defendants' threat of copyright infringment lawsuits and impoundment is a sham." FAC ¶ 38. The second cause of action incorporates by reference allegations contained in earlier paragraphs. FAC ¶ 35. Among the allegations which must be accepted as true for the purposes of this motion to dismiss, *N.L. Indus., Inc. v. Kaplan*, 792 F.2d at 898, include that defendants contacted Micro Star's vendors, such as Egghead Software, WalMart, and others that Micro Star's products are "shoddy and inferior", FAC ¶ 26, "with the express purpose of wrongfully disrupting those vendors' contacts and purchase orders with Micro Star", FAC ¶ 25, and threatening "a copyright infringement action and impoundment of all copies of Nuke It," FAC ¶ 28, which "is a sham." FAC ¶ 38.

The complaint alleges "a dangerous probability of achieving 'monopoly power". The FAC describes: "Moreover, by virtue of their anticompetitive acts, the defendants have a dangerous probability of success in monopolizing the market. In fact, upon information and belief, Micro Star is the only competition in the relevant market, and the defendants' anticompetitive conduct threatens to eliminate all competition in the market." FAC ¶ 39.

The complaint alleges "causal antitrust injury." The FAC describes: "As a result of the defendants' anticompetitive conduct and attempted monopolization barred by Section 2 of the Sherman Antitrust Act, Micro Star has suffered and continues to suffer damages in an amount to be determined at trial but in excess of $500,000. FAC ¶ 40.

Movants have cited no authority, because there is no authority supporting an argument that contacting a competitor's vendors making slanderous and libelous representations that Micro Star's products are "shoddy and inferior" and threatening lawsuits which accepting the facts of the complaint as true are "a sham" is protected. In fact, the law is to the contrary, and a matter of law that facts of the complaint state a cause of action for Sherman Act violations. *Sound, Inc. v. American Tel. & Telegraph Co.*, 631 F.2d 1324,1326 (8th Cir. 1980) (Refusal to dismiss under 12(c)

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS
Case No. 96-3435H                              - 12 -

affirmed on complaint on Sherman act violations, making false and slanderous statements to Sound's customers and potential customers, making threats of economic retribution to Sound's customers, and threatening to withhold telephone service from those purchasing or leasing Sound's equipment); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F. Supp. 164, 170-171 (C.D.Ill. 1992) (motion to dismiss denied on complaint which alleged threats of patent litigation in violation the Sherman Act).

### C.    The Complaint States a Cause of Action for Intentional Interference With Contractual Relations

Movants' arguments in support of their motion to dismiss Micro Star's cause of action for Intentional Interference with Contractual Relations are repeated in full herein:

> Plaintiff's Third Claim for interference with contractual relations and alleged misuse similarly fails, [fn5] as do the Fourth and Fifth Claims for unfair competition and conspiracy. Micro Star's allegations of supposed threats to retailers would, if they even existed, concern statements privileged in the presence of a good faith intellectual property claim. *See Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 313-14 (2d Cir. 1950).

*See Movant's pp. 19-20.*

The elements of a cause of action for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Querlimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 54 (1998) quoting *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1, 791 P.2d 587.)" *Id.*

The complaint pleads a valid contract and defendants' knowledge of this contract. The FAC alleges: "The defendants knew of the existing and prospective business and contractual relations between Micro Star and its vendors, including without limitation, WalMart, Egghead Software, Ingram Micro, and Target stores." FAC ¶ 42. The FAC alleges "defendant's intentional acts designed to induce a breach or disruption of the contractual relationship" and "actual breach or disruption of the contractual relationship." The FAC alleges: "By the wrongful acts set forth above,

the defendants intentionally disrupted Micro Star's advantageous contractual and prospective relations with its vendors who had agreed to purchase or had purchased Nuke It." FAC ¶ 43. The FAC also alleges: "The defendants knew that disruption of Micro Star's contractual relations would result from their copyright misuse, and intended that their anticompetitive conduct result in the disruption of Micro Star's contractual relations." FAC ¶ 44. "The defendants' wrongful acts alleged above were neither justified or privileged. Instead the defendants' actions were outside the realm of legitimate business transactions." FAC ¶ 45. The Complaint also describes the wrongful interference:

25. At some time on or about July 3, 1996, the defendants began a course of conduct designed to prevent sales of Nuke It nationally, so that the defendants could market their own new MAP files for Duke Nukem 3D. Accordingly, the defendants and authorized agents began contracting major nationwide distributors of game software, including those who had already placed order with Micro Star for thousands of units of Nuke It, with the express purpose of wrongfully disrupting those vendors' contracts and purchase orders with Micro Star.

26. In specific, the defendants stated, in essence, that if these vendors, such as Egghead Software, WalMart, and others, carried Nuke It, the defendants would file a legal action against them for copyright infringement and impound the copies of Nuke It. In addition, the defendants falsely represented that Nuke It infringed on their copyrights and trademarks, was shoddy and inferior quality, and that the defendants were going to release their own new MAP files.

27. As a result of these threats, the defendants caused the loss of thousands of unit sales to vendors over the last month alone, and cost Micro Star hundreds of thousands of dollars in revenue.

FAC ¶¶25-27.

Finally, the complaint alleges "resulting damage" The FAC states: "46. As a result of the defendants' intentional interference with Micro Star's contractual relations, Micro Star has suffered and continues to suffer damages in an amount to be determined at trial but in excess of $500,000." FAC ¶ 46.

Movants claim that each and every act of contacting the vendor is absolutely privileged, citing the authority of *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 313-14 (2d Cir. 1950). Movants, however, cleverly omit the relevant language of *Kaplan*: "it is not an actionable wrong for one *in good faith* to make plain to whomsoever he will that it is his purpose to insist upon what he

believes to be his legal rights, even though he may misconceive what those rights are." *Id.* at 314 (emphasis added). Moreover, the here, there is not "good faith" on the face of the complaint. Accepting the facts of the complaint pled as true and drawing all reasonable inferences therefrom in favor of the nonmoving party, movants contacted Micro Star's vendors disparaging Micro Star's product as "shoddy and inferior quality", falsely represented that Nuke It infringed on its copyrights and trademarks, misused its copyrights, and wrongfully threatened sham litigation and impoundment. FAC ¶¶ 25 -30. It cannot be said that the limited monopoly granted by Congress in the form of a copyright grants an unbridled privilege to commit trade libel, falsely threaten sham litigation, misuse copyrights, make false representations, and intimidate vendors. Accordingly, dismissal is not appropriate. *Peloza v. Capistrano United School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (court must assume that all general allegations "embrace whatever specific facts might be necessary to support them."); *Conley v. Gibson*, 355 U.S. 41, 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

**D.    The Complaint States a Cause of Action for Unfair Competition**

Unfair competition is defined to include "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code, § 17200.  California courts have consistently interpreted such language broadly.  An "unlawful business activity" includes "'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113. The Legislature "intended . . . [**734]  to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Id.*, at p. 111; *People v. KcKale*, 25 Cal.3d 626, 631-632 (1979)  "What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact..." *People v. KcKale*, 25 Cal.3d 626 (1979).  The complaint alleges that defendants contacted Micro Star's vendors, such as Egghead Software, WalMart, and others" wrongfully slandering and libeling Micro Star's product as "shoddy and inferior", FAC ¶ 26, "with the express purpose of wrongfully disrupting those vendors' contacts and purchase orders with

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS' AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**
Case No. 96-3435H                                    - 15 -

Micro Star", FAC ¶ 25, and threatening "a copyright infringement action and impoundment of all copies of Nuke It," FAC ¶ 28, which "is a sham." FAC ¶ 38, and with the "specific intent to monopolize the relevant market through, among other things, misuse of their copyright." FAC ¶ 37. *Antitrust violations, trade libel, bad faith interference, and misuse of copyright are not privileged.*

E.     **The Complaint Properly States a Theory of Recovery for Conspiracy**

"'The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508], citing *Mox Incorporated v. Woods* (1927) 202 Cal. 675, 677-678 [262 P. 302].) The complaint alleges each of the elements:

> 52.     In or about June 1996, the defendants reached an agreement to prevent sales of Micro Star's Nuke It and, upon information and belief, any other Duke Nukem 3D add-on product other than one created and distributed by the defendants. The defendants agreed that to effectuate the goals of the conspiracy, they would identify Micro Star's customers likely to carry Nuke It and seek to prevent the sales of Nuke It through threats of litigation and impoundment, even though the defendants knew that such threats, and such a lawsuit were legally untenable and a sham.

> 53.     In furtherance of the conspiracy, the defendants contacted Micro Star's customer base, and through the aforementioned threats, wrongfully induced Micro Star's vendors to cancel or repudiate existing orders for Nuke It.

> 54.     As a result of the defendants' conspiracy to interfere with Micro Star's contractual relations and monopolize the relevant market, Micro Star has suffered and continues to suffer damages in an amount to be determined at trial but in excess of $500,000.

FAC ¶¶52-54. Accordingly, assuming the facts of the complaint as true, complaint states a cause of action. Sherman anti-trust violations, wrongful interference with contract, and unfair competition are not privileged.

F.     **The Complaint States a Cause of Action for Declaratory Judgment**

The party seeking declaratory relief need establish only (1) an actual controversy, (2) regarding a matter within federal court subject matter jurisdiction. 28 U.S.C. § 2201; *Hal Roach*

PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS
Case No. 96-3435H                                                                 - 16 -

*Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). The question of an actual controversy is whether there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990). The complaint properly states a cause of action for declaratory judgment. The First Amended Complaint ("FAC"), ¶ 32, states "an actual controversy has arisen and exists among Micro Star and the defendants. The defendants contend that Nuke It infringes on their copyrights and trademarks for Duke Nukem 3D. Micro Star disputes this contention." The complaint further states that "Plaintiff desires a judicial declaration that Nuke It does not infringe on either the copyrights or trademarks or rights held by the defendants. In addition, Micro Star seeks a declaration that the defendants cannot enforce their copyrights against Micro Star because of their misuse of the copyrights as set forth above." FAC ¶ 33. The complaint also pleads a U.S. copyright dispute, which is properly a matter within the federal court subject matter jurisdiction. Accordingly, the complaint for declaratory relief is properly pled, and there is still a live controversy whether or not defendants are barred from enforcing any copyrights by the alleged fact of copyright misuse.

## V.

## COPYRIGHT MISUSE

Numerous courts have addressed a complete defense to copyright infringement. The Fourth Circuit in *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) held that a "successful defense of misuse of copyright bars a culpable plaintiff from prevailing on an action for infringement of the misused copyright." *Id.* at 974; *PRC Realty Systems v. National Assoc. of Realtors*, 972 F.2d 341 (4th Cir. 1992) (license barring sublicensing of the software undermined competition in the marketplace and prevented development of publishing software; violation of public policy involved in the grant of a copyright and upholding copyright misuse defense); *M. Witmark & Sons v. Berger Amusement Co.*, 177 F.2d 515 (8th Cir. 1949) (impermissible licensing practices a complete defense).

If a defendant was directly harmed by the misuse, beyond being absolved from claims of infringement, the defendant may be entitled to monetary damages. *Qad. Inc. v. ALN Assocs., Inc.,* 781 F. Supp. 561 (N.D. Ill), aff'd, 974 F.2d 834 (7th Cir. 1992). The common law origins of the defense was based on the doctrine of unclean hands. *See, e.g., Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir. 1979), cert. denied, 445 U.S. 917 (1980). Courts have traditionally refused to enforce the intellectual property privilege where a defendant has demonstrated that it was harmed by the plaintiffs' unconscionable conduct in a manner directly related to the matter in controversy. *See cases cited below.*

For example, in *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933), the Court denied relief for patent infringement to a plaintiff who had suppressed evidence that would have precluded issuance of the patent. In *Morton Salt Co. v. G.S. Suppiger Co.,* 314 U.S. 488 (1942), the Court explicitly denied relief to a plaintiff because of its misuse of its patent based upon a tying agreement, without requiring proof of actual harm to the infringing defendant. *Id.* at 493-94. The Court described that allowing patentees to benefit from expanding their privileges beyond the scope of the patent grant would subvert the public policies underlying patent law. *Id.* at 493-94.

Movants have not challenged the affirmative defense of copyright misuse on summary judgment. Movants have not even met the most basic requirement to shift the burden to Micro Star on the affirmative defense: movants have not even pointed out the absence of evidence from the defendant. *See Zands v. Nelson,* 797 F.Supp. 805 (S.D.Cal. 1992).

Moreover, like, *Keystone,* movants suppressed evidence that would have precluded the issuance of the copyright. *See Martin v. Cuny,* 887 F Supp 1390 (D.C. Colo 1995); *Foamation, Inc. v. Wedeward Enters.,* 947 F Supp 1287 (E.D. Wis. 1996). As described in section III.C. above, plaintiffs filed their copyright registration and a suit based upon that copyright registration claiming that Apogee was the exclusive author. However, after filing their complaint, Apogee filed a supplemental registration on September 13, 1996 revealing that the computer program for Duke Nukem 3D, the audiovisual elements, the software build engine, and the build editor were not authored or owned by Apogee Software, Ltd. *See Movants' Exhibit 2.*

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS' AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

Moreover, there is ample evidence to create a genuine issue of material fact. For example, an internal document produced by Movants reveals the anti-competitive ends and a desire to interfere with Micro Star's vendors. *See Sealed Gorman Decl., Exhibit 7* (BATES F000009). Likewise, Micro Star received at least three phone messages regarding movants' contacts with Micro Star's vendors. See Notice of Lodgment of Physical Evidence (Sound Recordings) and transcription, Benedict Declaration, Exhibit 1. Moreover, movants have produced numerous documents revealing their contacts with Micro Star's vendors. See Gorman Decl., Exhibit 1. Accordingly, movants have not met their burden, and in any case a genuine issue of material fact has been disclosed. *See* Micro Star's SUF 1-5.

## CONCLUSION

Based upon the foregoing points and authorities, and the documentary evidence supported herewith, Micro Star respectfully requests this Court deny Movants' Motion for Summary Judgment and Motion to Dismiss.

Respectfully Submitted,

DATED: April 25, 1999

FLYNN, SHERIDAN, TABB & STILLMAN

By:_____
        Seth Gorman
Attorneys for Plaintiff and
Counterclaim-Defendant

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S OPPOSITION TO DEFENDANTS'
AND COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**
Case No. 96-3435H                                    - 19 -